UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN BOSTROM,

                    Plaintiff,                    Case No. 1:15-cv-336

v.                                              Honorable Gordon J. Quist

J. ROWLAND et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.
The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation
Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any
prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a
claim upon which relief can be granted, or seeks monetary relief from a defendant immune from
such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's
*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's
allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504
U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure
to state a claim against Defendant Robinson.  Additionally, the Court will dismiss Plaintiff's claim
against Defendants Rowland and McKee for violation of due process, freedom of association and
the Eighth Amendment in connection with the permanent visitor restriction implemented against
Plaintiff's mother.  The Court will serve the complaint against Defendants Rowland, McKee,

Pepper, Wise and Benoit for retaliation and against Defendants Pepper, Spurbeck and Wojciechowski for Eighth Amendment violations.

## Discussion

I.   Factual allegations

Plaintiff John Bostrom presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility. Plaintiff alleges that he had regularly received visits from his mother and children until February 2013. On an unspecified date in February, 2013, Plaintiff's mother was visiting with him when Plaintiff and his mother complained about the foul language used by a female correctional officer towards them. After Plaintiff and his mother made this complaint, Defendant Rowland became hostile toward Plaintiff and his family. After another visit, Plaintiff told Defendant Rowland that if she continued to behave disrespectfully toward him and his family he would complain to her supervisors and file a grievance. Defendant Rowland responded to Plaintiff's remark by telling Plaintiff that she would terminate and permanently restrict Plaintiff's mother's visits if Plaintiff complained or filed a grievance. Plaintiff informed Defendant Benoit about Defendant Rowland's threats and Defendant Benoit told Plaintiff not to complain or file a grievance. Plaintiff also complained to Defendant McKee and Defendant Wise.

On February 9, 2013, as Plaintiff was waiting to visit with his mother, Defendant Rowland informed him that she had terminated his mother's visit because when Defendant Rowland tried to search Plaintiff's mother, Plaintiff's mother "swung at" Defendant Rowland. (Compl., docket #1, Page ID#7.) Defendant Rowland refused to return Plaintiff's identification card so he could return to his unit, and tried to get a rise out of Plaintiff so that she could place him in administrative segregation. During the week following this incident, Plaintiff was harassed by Defendant Rowland and other unit staff. Plaintiff alleges that this campaign of harassment resulted

-2-

in him losing control and, on February 16, 2013, Plaintiff was tazed, restrained and handcuffed, then escorted to administrative segregation.  While escorting Plaintiff, Defendant Pepper pushed and shoved Plaintiff and bent his left wrist in such a way that it snapped and broke.  Plaintiff told Defendant Pepper that he would file a grievance, complain and sue Defendant Pepper for breaking his wrist.  Plaintiff alleges that in response, Defendant Pepper referenced Plaintiff's complaint against Defendant Rowland as the reason he broke Plaintiff's wrist.  Plaintiff pleaded guilty to threatening behavior and disobeying an order in connection with the February 16, 2013, incident.

Plaintiff did not receive medical treatment on February 16.  Plaintiff was visited at his cell by Defendant Spurbeck, but he was not treated despite complaining that his wrist was broken and that he was in extreme pain.  Plaintiff alleges that Defendant Spurbeck falsified Plaintiff's medical record by writing that Plaintiff was "denying need for healthcare." (*Id.* at Page ID#10.) Plaintiff alleges that nurses made rounds, but other than giving Plaintiff some Motrin, the nurses refused to treat his broken wrist.

On February 22, 2013, Defendant Wojciechowski saw Plaintiff but denied him medical treatment, despite acknowledging that Plaintiff's wrist appeared to be, and felt, broken. Plaintiff alleges that when he explained to Defendant Wojciechowski that the officers escorting him to administrative segregation claimed that Plaintiff broke his wrist when he fell on it while trying to break his fall after being tazed, Defendant Wojciechowski said it would have been impossible for Plaintiff's wrist to have broken that way because the tasing would have prevented Plaintiff from thinking clearly enough to consider using his arms to break his fall.  Despite Plaintiff's request, Defendant Wojciechowski refused to x-ray Plaintiff's wrist and allegedly told Plaintiff, "this is what happens when [you] get into trouble." (*Id.* at Page ID#10.)

-3-

On March 7, 2013, nearly three weeks after Defendant Pepper broke Plaintiff's wrist, Plaintiff's wrist was x-rayed and it was confirmed that his wrist was broken.  Eventually, Plaintiff had wrist surgery.

On March 12, 2013, after a formal hearing at which Plaintiff's mother was present and gave testimony, Defendant McKee wrote to Plaintiff's mother advising her that she was to be permanently restricted from visiting any Michigan Department of Corrections facility.  Plaintiff alleges that this permanent restriction is a violation of Michigan Department of Corrections policy. Plaintiff asked Defendant McKee if he would deviate from the permanent restriction policy, but according to Plaintiff, Defendant McKee said: "That's what happens when you become a problem for us." (*Id.* at  Page ID#8.)  Since the visitor restriction was implemented, Plaintiff has had only one non-contact visit with his mother and two visits with his children.

On March 26, 2013, Defendant Wise wrote a misconduct report against Plaintiff for filing a grievance against Defendant Pepper for excessive force because Defendant Pepper was found not to have used excessive force against Plaintiff and because Plaintiff's grievance could have resulted in disciplinary action against Defendant Pepper.  Plaintiff alleges that Defendant Wise threatened Plaintiff during the grievance interview by telling Plaintiff "he was 'going to learn a lesson about how things go in Ionia'[.]"  (*Id.* at Page ID#12.)

On March 28, 2013, after Plaintiff told Defendant Benoit that Plaintiff intended to sue him and Defendant Rowland, Defendant Benoit said, "So you haven't learned." (Compl., docket #1, Page ID#12.)  A few minutes after this exchange Plaintiff was taken back to administrative segregation for a threatening behavior ticket written by Defendant Benoit for "trying to put a 'hit' on" Defendant Rowland.  (*Id.* at Page #13.)  On April 8, 2013, Defendant Benoit's threatening behavior ticket was dismissed.

-4-

After filing a number of grievances, it appears that Plaintiff was placed on modified access and as a result, he alleges that he was denied the ability to file additional grievances.

Plaintiff alleges claims for retaliation, violation of his due process, freedom of association and Eighth Amendment rights in connection with the visitor restriction prohibiting his mother from visiting him, and violation of his Eighth Amendment rights in connection with his broken wrist and failure to obtain medical treatment. Plaintiff also alleges a violation of Michigan Department of Corrections policy. As relief, Plaintiff seeks compensatory damages, punitive damages, declaratory and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     Retaliation

Plaintiff alleges that Defendant Rowland terminated his mother's visits and harassed him in retaliation for Plaintiff complaining about correctional staff's mistreatment of Plaintiff and his mother. Plaintiff alleges that Defendant McKee permanently restricted his mother from visiting in retaliation for Plaintiff complaining and writing grievances about staff misconduct. Additionally, Plaintiff alleges that Defendant Pepper broke his wrist in retaliation for Plaintiff complaining and writing grievances about Defendant Rowland's misconduct. Plaintiff alleges that Defendant Wise threatened him and issued a misconduct in retaliation for Plaintiff writing a grievance against Defendant Pepper for breaking his wrist. Plaintiff alleges that after he threatened to sue Defendant Benoit, Defendant Benoit retaliated against him by sending him to administrative segregation, keeping him in administrative segregation after he should have been released, and fabricating a misconduct which was later dismissed. Finally, Plaintiff alleges that Defendant Robinson retaliated against him for writing grievances by placing Plaintiff on modified access.

-6-

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this juncture, Plaintiff's allegations are sufficient to state a retaliation claim against Defendants Rowland, McKee, Pepper, Wise and Benoit. However, Plaintiff fails to sufficiently state a retaliation claim against Defendant Robinson because he cannot demonstrate adverse action. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

B.      Visitor Restriction

Plaintiff alleges that Defendants Rowland and McKee violated his right to freedom of association under the First Amendment, his Eighth Amendment rights and his right to due process under the Fourteenth Amendment, when they permanently restricted his mother's visiting privileges. Additionally, Plaintiff alleges that this permanent restriction violates MDOC policy.

Under MDOC regulations, an inmate may receive visits only from individuals placed on an approved visitor list, except that a small number of certain specified persons may visit without

-7-

being listed.  *See* MDOC Policy Directive (PD) 05.03.140 ¶¶ G, N.  Once on the approved visitor list, a visitor can request removal, *id.* at ¶¶ Q, R, or the MDOC may terminate a visit and disallow future visits under certain circumstances, *id.* at ¶¶ JJ *et seq.*  A permanent restriction prohibiting all future visits may be imposed for a limited number of reasons, including when "[t]he visitor assaults staff or others or threatens them with physical harm."  *Id.* at ¶ PP.2.  A restricted visitor may have the restriction removed "by sending a written request to the Warden of the facility where the prisoner with whom the visitor wants to visit is located."  *Id.* at ¶ XX.  The Warden makes a written recommendation to the CFA Deputy Director, who must then decide whether to remove the restriction.  *Id.* at ¶ XX.1.  If the restriction is not removed, the visitor receives written notice, which shall include information about when the visitor will be eligible to reapply for removal.  *Id.*; *see also id.* at ¶ XX.2.

### 1.     First Amendment

Plaintiff fails to state a claim for violation of his First Amendment rights against Defendants Rowland and McKee.  Prisoners do not enjoy all of the liberties and privileges enjoyed by other citizens.  *See Overton v. Bazzetta (Bazzetta I)* , 539 U.S. 126, 131 (2003).  A prisoner does not retain rights inconsistent with proper incarceration.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977);  *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).  Freedom of association is among the rights least compatible with incarceration; some curtailment of that right must be expected in the prison context.  *See Jones*, 433 U.S. at 125–126; *Bazzetta I*, 539 U.S. at 131.

As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts.  *See Shaw*, 532 U.S. at 228-29; *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S.

342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones*, 433 U.S. at 125-126.  These concerns are even stronger when a state penal institution is involved.  *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

Prison officials may enforce a regulation that impinges on a prisoner's constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  *Id*. at 89-90.  Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections.  *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence). *See also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

After an administrative hearing in which she was present and testified, Plaintiff's mother was permanently restricted from visiting MDOC facilities because she was found to have physically threatened Defendant Rowland.  MDOC PD 05.03.140 ¶ PP.2, which allows a visitor to

be permanently restricted when the visitor has threatened staff with physical harm, serves valid penological interests such as maintaining order within the prison and protecting the safety of staff and other inmates.  Additionally, there remained available to Plaintiff multiple alternatives to in-person visits, such as writing letters to his mother, telephone calls, and Plaintiff and his mother could exchange information via a non-restricted visitor.  These alternatives were readily available to Plaintiff, allowed Plaintiff to maintain a close and supportive relationship with his mother, and presented little, if any, cost to the valid penological interests underpinning MDOC PD 05.03.140 ¶ PP.2.  Moreover, the impact of the restriction was intended to protect guards and other prisoners and to allow for the safe and efficient operation of the prison.  Finally, although denominated as "permanent," a restricted visitor may have the restriction removed.  *See id.* at ¶ XX.

Under the circumstances present here, Plaintiff cannot state a claim against Defendants Rowland and McKee for violation of his First Amendment rights.

### 2.     Eighth Amendment

Plaintiff fails to state a claim for violation of his Eighth Amendment rights against Defendants Rowland and McKee.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff cannot state an Eighth Amendment claim based on his mother's permanent visitor restriction because enforcement of the visitor restriction regulation does not create "inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety.  Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur."  *Bazzetta I*, 539 U.S. at 137 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976); *Rhodes v. Chapman*, 452 U.S. 337 (1981).)  As discussed above, Plaintiff had readily available alternative means of maintaining contact with his mother, including letter writing and phone calls.  Additionally, Plaintiff's mother may obtain removal of the restriction.  Consequently, Plaintiff fails to state an Eighth Amendment claim against Defendants Rowland and McKee.

### 3.    Due Process

Plaintiff fails to state a claim against Defendants Rowland and McKee for violation of his Fourteenth Amendment rights.  "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazzetta v. McGinnis (Bazzetta II)*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due

process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. Under *Sandin*, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer–Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff fails to state a due process claim against Defendant Rowland because he fails to allege any conduct by Rowland that deprived him of a protected liberty interest. Plaintiff only alleges that Defendant Rowland informed him that she had terminated his mother's February 9, 2013 visit because his mother took a swing at her. Plaintiff fails to allege any facts to suggest that Defendant Rowland was responsible for deciding to permanently restrict his mother's visits.

Moreover, it is not apparent that Plaintiff had a liberty interest in his visitation that was protected by due process. On remand following the Supreme Court's decision in *Bazzetta I*, 539 U.S. at 126, the Sixth Circuit considered whether Michigan's visitor restriction policy implicates a protected liberty interest entitling a prisoner to the due process protections of a hearing. *See*

-12-

*Bazzetta II*, 430 F.3d at 802–03. The Sixth Circuit concluded that the Supreme Court had implicitly ruled on the issue by citing *Sandin* and stating that the visitor restriction was not a "'dramatic departure from accepted standards for conditions of confinement.'" *Id*. at 799 (quoting *Bazzetta I*, 539 U.S. at 137). Based on the Supreme Court's language, the Sixth Circuit held that, because the permanent, but reviewable, visitor restriction policy did not amount to an "atypical and significant hardship" in relation to the ordinary incidents of prison life, a prisoner has no protectible liberty interest at stake in the policy. *Id*. at 803-805.

Applying *Bazzetta II* to the instant case, the Court concludes that Plaintiff has no liberty interest in the visitor restriction that permanently prohibited Plaintiff's mother from visiting. As previously discussed, MDOC policy authorizes a permanently restricted visitor to request removal of the visitor restriction. MDOC PD 05.03.140 ¶ XX. If removal of the restriction is denied, the restricted visitor receives written notice, which shall include information about when the visitor will be eligible to reapply for removal of the restriction. Id. at ¶ XX.1.

Moreover, even assuming that Plaintiff had a protected liberty interest in visitation with his mother, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).

Prior to having the visitor restriction made permanent, Plaintiff received a hearing before a hearing officer. The hearing officer considered the evidence collected by Investigator Novak during his investigation of the incident involving Defendant Rowland and Plaintiff's mother, including the statements of other correctional officers who were present at the time of the incident,

Plaintiff's mother's statement and the statement of Plaintiff's two children who were also present at the time of the incident.  Additionally, the hearing officer heard the live testimony of Plaintiff's mother.  Moreover, after the hearing was adjourned, the hearing officer read the proposed restriction to Plaintiff who was given an opportunity to, and did, comment on the restriction.  The Due Process Clause does not guarantee that the procedure will produce a correct decision.  "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980).  "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). As a result, even if Plaintiff had a liberty interest in his visitation with his mother, he received the process he was due.

Finally, Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

-14-

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim challenging the violation of prison policy respecting visitation, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the associated federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.

Based on the foregoing, Plaintiff fails to state a claim against Defendants Rowland and McKee based on the visitor restriction permanently prohibiting his mother from visiting. Plaintiff's state-law claims for violation of MDOC policy will be dismissed without prejudice.

C.   Eighth Amendment: Excessive Force and Deliberate Indifference to a Serious Medical Need

Plaintiff alleges that Defendant Pepper used excessive force in violation of the Eighth Amendment when he broke Plaintiff's wrist while escorting Plaintiff to administrative segregation. Additionally, Plaintiff alleges that in violation of the Eighth Amendment, Defendant Pepper refused to obtain medical treatment for Plaintiff after he broke Plaintiff's wrist. Further, Plaintiff alleges that Defendant Spurbeck visited Plaintiff at his cell at which time Plaintiff advised Defendant Spurbeck that his wrist was broken and that he was in extreme pain. Nevertheless, Defendant Spurbeck did not treat Plaintiff and falsified Plaintiff's medical record by writing that Plaintiff had

denied the need for medical care.  Finally, Plaintiff alleges that Defendant Wojciechowski failed to give Plaintiff medical treatment or to obtain an x-ray of Plaintiff's wrist, despite acknowledging that Plaintiff's wrist appeared to be, and felt, broken.

At this juncture, Plaintiff's allegations regarding violations of his Eighth Amendment rights by Defendants Pepper, Spurbeck and Wojciechowski warrant service of the complaint.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff fails to state a claim against Defendant Robinson.  Additionally, Plaintiff fails to state a claim against Defendants Rowland and McKee for violation of due process, freedom of association and the Eighth Amendment in connection with the permanent visitor restriction implemented against Plaintiff's mother.

Accordingly, Defendant Robinson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Additionally, Plaintiff's claims for violations of his due process, freedom of association and Eighth Amendment rights in connection with the permanent visitor restriction will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Rowland, McKee, Pepper, Wise and Benoit for retaliation and against Defendants Pepper, Spurbeck and Wojciechowski for Eighth Amendment violations. To the extent Plaintiff raises any state-law claims for violation of MDOC policy, those claims will be dismissed without prejudice.

An Order consistent with this Opinion will be entered.

Dated:  July 28, 2015                            _____/s/ Gordon J. Quist_____
                                                 GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE