UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BOSTROM #647630,

    Plaintiff,                              Hon. Gordon J. Quist

v.                                             Case No. 1:15-cv-336

J. ROWLAND, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 18). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's verified complaint. Plaintiff regularly received visits from his mother and children until February 2013. On an unspecified date that month, Plaintiff's mother was visiting Plaintiff when the pair complained about foul language being directed at them by a female correctional officer. After Plaintiff and his mother made this complaint, Corrections Officer (C.O.) Rowland became hostile toward Plaintiff and his family. Plaintiff later told Rowland that if she continued to behave disrespectfully toward him and his family he would complain to her supervisors and file a grievance. Rowland responded to Plaintiff's remark by telling Plaintiff that she would terminate and permanently restrict Plaintiff's mother's visits if Plaintiff complained or filed

a grievance. Plaintiff informed Sergeant Benoit of Rowland's threats and Benoit told Plaintiff not to complain or file a grievance. Plaintiff also complained to Warden McKee and Lieutenant Wise.

On February 9, 2013, as Plaintiff was waiting to visit with his mother, Rowland informed him that she had terminated his mother's visit because when Rowland tried to search Plaintiff's mother, she "swung at" Rowland. Rowland refused to return Plaintiff's identification card so he could return to his unit, and tried to get a rise out of Plaintiff so that she could place him in administrative segregation. During the week following this incident, Plaintiff was harassed by Rowland and other unit staff. This campaign of harassment resulted in Plaintiff losing control and, on February 16, 2013, Plaintiff was tased, restrained, and escorted to administrative segregation.

While escorting Plaintiff, C.O. Pepper pushed and shoved Plaintiff and bent his left wrist in such a way that it snapped and broke. Plaintiff told Pepper that he would file a grievance and sue Pepper for breaking his wrist. In response, Pepper referenced Plaintiff's complaint against Rowland as the reason he broke Plaintiff's wrist. Despite having suffered a broken wrist, Plaintiff did not receive medical treatment the day of his injury. Plaintiff was visited at his cell by R.N. John Spurbeck who falsely reported that Plaintiff was "denying need for healthcare." Nurses made rounds, but other than giving Plaintiff some Motrin, likewise refused to treat his broken wrist.

On February 22, 2013, Physician's Assistant Wojciechowski met with Plaintiff but denied him medical treatment, despite acknowledging that Plaintiff's wrist appeared to be, and felt, broken. When Plaintiff explained that the officers escorting him to administrative segregation claimed that Plaintiff broke his wrist when he fell on it while trying to break his fall after being tased, Wojciechowski said it would have been impossible for Plaintiff's wrist to have broken that way because the tasing would have prevented Plaintiff from thinking clearly enough to consider using his arms to

break his fall. Wojciechowski refused to x-ray Plaintiff's wrist, however, and told Plaintiff, "this is what happens when [you] get into trouble."

On March 7, 2013, nearly three weeks after suffering a broken wrist, Plaintiff obtained an x-ray confirming that his wrist was broken. Eventually, Plaintiff had wrist surgery. On March 12, 2013, after a formal hearing at which Plaintiff's mother was present and gave testimony, Warden McKee wrote to Plaintiff's mother advising her that she was to be permanently restricted from visiting any MDOC facility. Plaintiff asked McKee if he would deviate from the permanent restriction decision, but McKee said: "That's what happens when you become a problem for us."

On March 26, 2013, Lieutenant Wise wrote a misconduct report against Plaintiff for filing a grievance against Pepper alleging excessive force. Wise also stated to Plaintiff that "he was 'going to learn a lesson about how things go in Ionia'[.]" On March 28, 2013, after Plaintiff told Sergeant Benoit that he intended to sue him and Rowland, Benoit said, "So you haven't learned." A few minutes after this exchange Plaintiff was taken back to administrative segregation for a threatening behavior ticket written by Benoit. On April 8, 2013, Benoit's threatening behavior ticket was dismissed.

After filing a number of grievances, Plaintiff was placed on modified access and as a result, he was denied the ability to file additional grievances. Plaintiff alleges claims for retaliation, violation of his due process, freedom of association and Eighth Amendment rights in connection with the visitor restriction prohibiting his mother from visiting him, and violation of his Eighth Amendment rights in connection with his broken wrist and failure to obtain medical treatment. Plaintiff also alleges violation of MDOC policy. Many of Plaintiff's claims were dismissed on screening. Defendants Benoit, McKee, Pepper, Rowland, Spurbeck, Wise, and Wojciechowski now move to dismiss Plaintiff's remaining claims for failure to properly exhaust administrative remedies.

**LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the

issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.  If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.*  The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB.  If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF.  The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

Defendants assert that Plaintiff failed to pursue through all three steps of the grievance process any grievance regarding his remaining claims.  Plaintiff does not dispute this, but asserts that his obligation to pursue redress through the prison grievance process was relieved when Defendants repeatedly subjected him to threats of harm should he continue to pursue the grievance process. Specifically, Plaintiff has submitted a sworn complaint as well as a sworn statement in response to the present motion in which he asserts the following.  Defendant Pepper stated to Plaintiff that Plaintiff's grievance activity was "the reason or justification for breaking his wrist." (PageID.9, 172).  Various Defendants stated to Plaintiff that his grievance activity was the reason his mother's visits were restricted, why he was being charged with misconducts, and why he was placed in administrative segregation. (PageID.12-14, 172).  Defendant Robinson threatened to charge Plaintiff with further misconduct violations if he continued to pursue relief through the grievance process. (PageID.14, 172).

Defendants counter with an affidavit executed by Defendant Robinson in which she denies Plaintiff's allegations. (PageID.141-43).

The United States Supreme Court recently clarified that a prisoner need only exhaust such administrative remedies as are available. *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). The Court further observed that "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the remedy in question is unavailable for purposes of the PLRA. *Id.* at 1858-60. The *Ross* Court did not define or otherwise describe the term "intimidation." Nevertheless, the Court has no trouble concluding that the harms Plaintiff alleges - physical violence, threats of sanction, and deprivation of familial contact - satisfy any reasonable definition of "intimidation." Moreover, Plaintiff's claims of intimidation also concern specific occurrences and threats and are, therefore, distinct from a "mere allegation of a generalized fear of retaliation." *Briscoe v. D'Agata*, 2016 WL 3582121 at *8 (S.D.N.Y., June 27, 2016) (post-*Ross* decision noting that mere concerns of intimidation are insufficient to excuse failure to exhaust).

In sum, Defendants have failed to meet their burden to demonstrate a failure by Plaintiff to pursue all available administrative remedies. Accordingly, the undersigned recommends that Defendants' motion be denied.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 18), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                                            Respectfully submitted,

Date:  July 20, 2016                                                                /s/ Ellen S. Carmody
                                                                                     ELLEN S. CARMODY
                                                                                     United States Magistrate Judge