UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN BOSTROM #647630,

                Plaintiff,                        Hon. Gordon J. Quist

v.                                          Case No. 1:15-cv-336

J. ROWLAND, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 43). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's verified complaint. Plaintiff regularly received visits in prison from his mother and children. On an unspecified date in February 2013, Plaintiff's mother was visiting Plaintiff when the pair complained about foul language being directed at them by a female correctional officer. After making this complaint, Corrections Officer Rowland became hostile toward Plaintiff and his family. Plaintiff later told Rowland that if she continued to behave disrespectfully toward him and his family he would complain to her supervisors and file a grievance. Rowland responded by telling Plaintiff that she would terminate and permanently restrict his mother's visits if he complained or filed a grievance. Plaintiff informed

Sergeant Benoit of Rowland's threats and Benoit instructed Plaintiff not to complain or file a grievance.    Plaintiff also complained to Warden McKee and Lieutenant Wise.

On February 9, 2013, Rowland terminated a visit from Plaintiff's mother after she "swung at" Rowland during an attempt to conduct a search.    Warden McKee subsequently directed that Plaintiff's mother be permanently restricted from visiting any MDOC facility.    During the week following this incident, Plaintiff was harassed by unit staff at Rowland's behest.    On February 16, 2013, Plaintiff "succumbed" to this harassment and engaged in inappropriate behavior which resulted in him being charged with misconduct violations and taken to administrative segregation.

While escorting Plaintiff to administrative segregation, Corrections Officer Pepper shoved Plaintiff and bent his left wrist causing it to snap and break.    Plaintiff told Pepper that he would file a grievance and sue Pepper for breaking his wrist.    In response, Pepper told Plaintiff, "I know.    That's what you get."    Pepper later suggested that he broke Plaintiff's wrist because Plaintiff had complained about Rowland's behavior.    Later that day, Registered Nurse Spurbeck visited Plaintiff's cell to examine his wrist.    Spurbeck refused to examine Plaintiff's wrist and instead falsely reported that Plaintiff was "denying need for healthcare."

On February 22, 2013, Physician's Assistant Holt [1] examined Plaintiff.    Holt concluded that Plaintiff's wrist "appeared and felt broken," but nevertheless refused Plaintiff medical care.    Holt instead told Plaintiff, "this is what happens when [you] get into trouble."    X-rays of Plaintiff's wrist, taken March 7, 2013, revealed that Plaintiff's wrist was broken.    Plaintiff ultimately

---

[1]  Holt, since married, is referred to as Wojciechowski in Plaintiff's complaint.

required surgery to repair his wrist.    On March 11, 2013, Plaintiff filed a grievance alleging excessive force against Defendant Pepper.

On March 26, 2013, Lieutenant Wise charged Plaintiff with misconduct for filing a false grievance against Pepper alleging excessive force.    Wise informed Plaintiff that he was "going to learn a lesson."    On March 28, 2013, after Plaintiff told Sergeant Benoit that he intended to sue him and Rowland, Benoit responded, "So you haven't learned."    A few minutes after this exchange Plaintiff was returned to administrative segregation based on a charge by Benoit that Plaintiff had engaged in threatening behavior, a charge which was subsequently dismissed.

Plaintiff initiated this action alleging various claims, a great many of which were dismissed on screening.    At this juncture, the only claims remaining in this matter are: (1) retaliation claims against Defendants Rowland, McKee, Pepper, Wise, and Benoit, and (2) Eighth Amendment claims against Defendants Pepper and Spurbeck.    The remaining Defendants now move for summary judgment.

## **LEGAL STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a).    A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."    *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).    The fact that the evidence may be controlled or possessed by the moving

party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.*

at 353-54.   In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, see Morris v. Oldham County Fiscal Court, 201 F.3d 784, 787 (6th Cir. 2000); Minadeo, 398 F.3d at 761, a moving party with the burden of proof   faces a "substantially higher hurdle."   Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002); Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001).   "Where the moving party has the burden -- the plaintiff on a claim for relief or  the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)).   The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."   Arnett, 281 F.3d at 561 (quoting 11 James William Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000); Cockrel, 270 F.2d at 1056 (same).   Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different  interpretations or inferences by the trier of fact."   Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Eighth Amendment Claims**

Plaintiff claims that Defendant Pepper, by breaking his wrist, subjected him to the use of excessive force in violation of the Eighth Amendment.   Plaintiff further claims that Defendant Spurbeck violated his Eighth Amendment rights by failing to provide him with appropriate medical treatment for his broken wrist.

A.        Defendant Pepper

1.        Legal Standard

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.   U.S. Const. amend. VIII.   The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision.   *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component.   *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment.   *Id.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency.   *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). While the Eighth Amendment does not prohibit every *de minimis* use of physical force, where "prison officials maliciously and sadistically use force to cause harm," contemporary standards of decency

"always are violated" regardless whether the force applied was *de minimis* or resulted in injury. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299.   In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21.   When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response.   *Hudson*, 503 U.S. at 7.   The absence of injury, while relevant, is not dispositive. *Id.*

The Supreme Court recently had an opportunity to again examine the relationship between the amount of force employed by a prison official and the reason or rationale for such.   In this regard, the Court observed as follows:

> When prison officials maliciously and sadistically use force to cause harm, the Court recognized, contemporary standards of decency always are violated. . .whether or not significant injury is evident.   Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
>
> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry.   [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.   The extent of injury may also provide some indication of the amount of force applied.   As we stated in *Hudson*, not every malevolent touch by a prison guard gives rise to a federal cause of action.   The Eighth

> Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.    An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.    An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (internal citations and quotations omitted).

### 2.    Defendant is Not Entitled to Summary Judgment

Defendant Pepper argues that he is entitled to summary judgment based upon the result of the March 26, 2013 misconduct hearing concerning the misconduct charge against Plaintiff for "Interference with the Administration of Rules."    (ECF No. 44 at PageID.435).    In his motion for summary judgment, however, Defendant Pepper fails to advance any argument in support of the proposition that the results of this misconduct hearing compel relief in his favor.    Instead, Defendant simply assumes that such is the case.

In light of the deficiencies in Defendant's argument, the Court, on May 19, 2017, issued to Defendants an Order to Show Cause, noting that while "Defendants seek to have the Court give preclusive effect to the findings and conclusions of various prison misconduct proceedings," Defendants "have failed. . . to articulate a proper basis or rationale for such."    (ECF No. 54).    The Court noted that controlling authority in the Sixth Circuit holds that the factual findings made in a prison disciplinary proceeding are not given preclusive effect in subsequent proceedings as a matter of course.    (ECF No. 54 *quoting Roberson v. Torres*, 770 F.3d 398, 404-05 (6th Cir. 2014)).    The

Court further observed that "Defendants have failed to address the factors relevant to determining whether preclusive effect should be accorded the factual findings in question, but instead seem to assume, incorrectly, that such is simply mandated."   (ECF No. 54).   Accordingly, the Court ordered Defendants "to show cause why their request to give preclusive effect to the factual findings in question should not be rejected."   (ECF No. 54).   Defendants responded by asserting that the authority cited by the Court in its Order to Show Cause was inapplicable to resolving their motion for summary judgment.   (ECF No. 56).   The Court disagrees.

As the Court previously observed, in *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit held that under certain circumstances a court must afford preclusive effect to the factual findings made in a prison disciplinary proceedings.   *Id.* ay 911-18.   However, such preclusive treatment is not merely accorded as a matter of course.   In *Roberson*, the Sixth Circuit underscored this point:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad.   *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing.   Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case.   Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so - not just in theory, but in practice.   It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05.

Defendant has failed to offer any argument that the factual findings made in the March 26, 2013 misconduct hearing are entitled to preclusive effect in this matter.    This failure is not insignificant considering that the March 26, 2013 misconduct hearing involved a Class II misconduct charge.    (ECF No. 44-7 at PageID.519).    A Class I misconduct charge is considered a "major" misconduct, whereas a Class II misconduct charge is considered a "minor" misconduct.    *See Turner v. Gilbertson*, 2017 WL 1457051 at *2 n.2 (W.D. Mich., Apr. 25, 2017).    The Sixth Circuit decisions in *Peterson* and *Roberson*, which provide that in certain circumstances preclusive effect can be afforded the factual findings made in a prison disciplinary proceeding, both concerned circumstances in which a prisoner was charged with a Class I misconduct and, therefore, presumably had a greater incentive to litigate any disputes of fact.    *See Peterson*, 714 F.3d at 908; *Roberson*, 770 F.3d at 400. Accordingly, preclusion under *Peterson* and *Roberson* appears to be limited to Class I misconduct proceedings.    *See Doss v. Maki*, 2017 WL 1755758 at *6 n.2 (W.D. Mich., May 5, 2017).    The Court, therefore, rejects Defendant Pepper's argument that the findings made in the misconduct hearing in question are entitled to preclusive effect in this matter.    Furthermore, even if the Court concluded otherwise, the result would be the same because the hearing officer that conducted the March 26, 2013 misconduct hearing did not make any factual findings which, even if given preclusive effect, result in a conclusion that Defendant Pepper is entitled to summary judgment.

The misconduct hearing in question concerned the charge of "Interference with the Administration of Rules."    (ECF No. 44-7 at PageID.519).    While Defendants have presented no evidence describing the nature of this particular charge, from the description contained in the Misconduct Report, it appears that this charge is applicable when a prisoner falsely charges a prison official with engaging in conduct that, if true, would subject the prison official to disciplinary action.

(ECF No. 44-7 at PageID.519).    In addition to the allegations which form the basis for this charge, the Hearing Report contains two sections: (1) evidence and/or prisoner statement in addition to misconduct report, and (2) reasons for findings.    (ECF No. 44-7 at PageID.520).

With respect to the evidence and prisoner statement, the Hearing Report reads as follows:

> Prisoner is present.    Prisoner states that this grievance has not been completed yet.    This Hearing Officer explained that this grievance is complete.    The Lieutenant that completed the investigation found there was no excessive[2]  used in the incident.

The Hearing` Officer found Plaintiff guilty of the charge of "Interference with the Administration of Rules."    (ECF No. 44-7 at PageID.520).    Regarding the "reasons" for this conclusion, the Hearing Report simply reads:`

> This Hearing Officer finds the information in the body of this misconduct to be credible.

(ECF No. 44-7 at PageID.520).

Simply stated, the Hearing Officer did not make any *factual* findings which, if afforded preclusive effect, result in a finding that Defendant Pepper is entitled to summary judgment.    That the Hearing Officer found the allegations in the Misconduct Report "to be credible" is not a fact on which summary judgment can be granted.    Furthermore, should Defendant subsequently argue that

---

[2]  The Court can surmise that the grievance referred to in this passage is Plaintiff's grievance alleging use of excessive force against Defendant Pepper.   It is not clear, however, that such is the case given the lack of detail in the Report.   Furthermore, while the Court can perhaps surmise that the word "force" was intended to be included at this point in the sentence, the Court cannot ignore that such word does not actually appear in the Report.   Moreover, given the lack of detail in the Hearing Report and the lack of evidence from Defendant, the inclusion at this location of the word "force" is simply not compelled.

inherent in the Hearing Officer's finding of guilt is the determination that Defendant Pepper did not subject Plaintiff to excessive force as alleged, such likewise fails to advance Defendant's cause.

To say that Defendant Pepper did not engage in excessive force is not a factual determination, but is instead a legal conclusion.   As the Court previously indicated to Defendants, however, the legal conclusions resulting from a prison misconduct hearing enjoy no preclusive effect in this Court.   *See Peterson*, 714 F.3d at 918 ("our holding includes only *factual* issues decided by a state agency").   Stated a bit differently, even if the Court accepts as fact that Defendant Pepper was found by a prison official to have not used excessive force on Plaintiff, such does not entitle Defendant to summary judgment in this Court because the record contains no evidence of the standard by which such a determination was made.   Had the Hearing Officer below made *factual* findings regarding the events giving rise to Plaintiff's claim of excessive force this would perhaps be a different matter, but the Hearing Officer made no such findings.

Having concluded that the March 26, 2013 Misconduct Report fails to advance Defendant Pepper's cause, the Court must determine whether there is other evidence in the record which might entitle Defendant to summary judgment.   Defendant Pepper has submitted an affidavit in which he simply asserts that Plaintiff's allegations "are false."   (ECF No. 46 at PageID.561). Defendant also makes reference in his affidavit to the investigation which concluded that he did not use excessive force against Plaintiff.   (ECF No. 46 at PageID.561).   For the reasons discussed above, however, this conclusion does not advance Defendant's cause.   Finally, Defendant makes reference in his affidavit to an alleged video which demonstrates that he did not use excessive force. (ECF No. 46 at PageID.561-62).   Defendant has not submitted this alleged video to the Court nor is there evidence that the video has been provided to Plaintiff.   In the absence of the actual video in

question, the assertions in Defendant's affidavit are nothing more than unsubstantiated opinions as to its contents.    Moreover, even if the Court accepts as fact Defendant's assertions regarding the video, such does not entitle Defendant to summary judgment.    Defendant asserts that the video depicts Plaintiff falling to the ground and breaking his wrist after a taser was deployed against Plaintiff. (ECF No. 46 at PageID.561-62).    While Defendant asserts that the taser was deployed because Plaintiff "was non-compliant with staff," without evidence concerning the specific events leading to the use of the taser, the Court cannot conclude that such did not constitute excessive force.

Plaintiff, on the other hand, asserts in his verified complaint that Defendant Pepper "pushed and shoved" Plaintiff because "he was not walking fast enough."    (ECF No. 1 at PageID.9). Plaintiff asserts that Defendant then "bent [his] left wrist until it snapped and broke," immediately after which he stated to Plaintiff, "I said 'speed up'."    (ECF No. 1 at PageID.9).    Plaintiff further alleges that when he cried out in pain, Defendant Pepper stated, "that's what you get."    (ECF No. 1 at PageID.9).    Plaintiff has also submitted a letter from an analyst employed by the Office of Legislation Corrections Ombudsman.    (ECF No. 1-1 at PageID.28).    According to the analyst, the aforementioned video revealed that Plaintiff broke his wrist "because an officer used a 'gooseneck' form," not when Plaintiff fell to the ground as Defendant asserts.    (ECF No. 1-1 at PageID.28).    In sum, Defendant cannot demonstrate the absence of a genuine factual dispute on the question whether he subjected Plaintiff to excessive force in violation of the Eighth Amendment.    Accordingly, the undersigned recommends that Defendant Pepper's motion for summary judgment be denied as to Plaintiff's Eighth Amendment claim.

### B.    Defendant Spurbeck

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.    *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).    Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."    *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps.    First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. When evaluating the objective prong of this analysis, the Court must first determine whether the alleged injury or medical need is "obvious," i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."    *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004); *see also, Cain v. Irvin*, 286 Fed. Appx. 920, 927 (6th Cir., July 17, 2008).    If the injury or medical need is obvious, the question becomes whether the plaintiff received treatment "within a reasonable time."    *See Blackmore*, 390 F.3d at 899-900 (where the plaintiff's injury or medical need is obvious, he satisfies the objective prong of the analysis by demonstrating that "he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame").    If, on the other hand, the injury or medical need is not obvious, the plaintiff must submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury."    *Id.*

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it."  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment.  *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

As discussed above, Plaintiff injured his wrist on February 16, 2013.   Plaintiff alleges that following this injury he requested medical treatment.   (ECF No. 1 at PageID.10).   Plaintiff

further alleges that Defendant Spurbeck responded to his request, but refused to examine his wrist. (ECF No. 1 at PageID.10).   Defendant argues that he is entitled to summary judgment "because [Plaintiff] has not placed verified medical evidence into the record of a detrimental effect of any delay in medical treatment by Spurbeck."   (ECF No. 44 at PageID.438).   The Court agrees.

The medical evidence reveals that at 3:33 p.m. on February 16, 2013, Defendant Spurbeck met with Plaintiff at his cell.   (ECF No. 42-1 at PageID.344).   Defendant Spurbeck reported that Plaintiff refused treatment, an assertion which Plaintiff disputes.   (ECF No. 1 at PageID.10; ECF No. 42-1 at PageID.344).   The following morning, at 8:36 a.m., Plaintiff was examined by a different nurse.   (ECF No. 42-1 at PageID.345).   The nurse observed "some slight swelling" in Plaintiff's wrist, but "no redness or bruising or broken skin."   (ECF No. 42-1 at PageID.345).   Plaintiff's fingertips were "warm" and exhibited "spont[aneous] cap[illary] refill." (ECF No. 42-1 at PageID.345).   While subsequent x-rays revealed that Plaintiff had, in fact, suffered a "fracture of the distal radius," there is nothing in the record to suggest that this break was so severe that it would have been obvious, as of February 16, 2013, that Plaintiff required medical treatment.

Because there is no evidence indicating that, as of February 16, 2013, Plaintiff was experiencing an obvious need for medical treatment, Plaintiff must present medical evidence establishing that he suffered "additional injury" as a result of the seventeen (17) hour delay in treatment he experienced.   Plaintiff has presented no such evidence.   The Court acknowledges that there is evidence indicating that Plaintiff's fracture "didn't heal correctly."   (ECF No. 42-1 at PageID.387). However, there is nothing in the record even suggesting that any diminution in treatment outcomes Plaintiff may have experienced were caused by the brief delay in treatment Plaintiff experienced as opposed to the nature of Plaintiff's injury or deficient treatment by a different care provider.

Accordingly, the undersigned recommends that Defendant Spurbeck's motion for summary judgment be granted as to this claim.

## II.        Retaliation Claims

Plaintiff alleges that Defendants Rowland, McKee, Pepper, Wise, and Benoit each subjected him to unlawful retaliation in violation of his First Amendment rights.    The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct.   *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).    Plaintiff's claims against each Defendant is addressed separately below.

### A.      Defendant Benoit

In his verified complaint, Plaintiff asserts the following.    On March 28, 2013, Plaintiff threatened to sue Benoit for his involvement in two incidents: (1) the decision to prohibit his mother from further visitation, and (2) the encounter in which Plaintiff injured his wrist.   (ECF No. 1 at PageID.12).    Benoit responded by charging Plaintiff with a misconduct violation for threatening behavior and placing Plaintiff in segregation.    (ECF No. 1 at PageID.12-13).    While the misconduct charge was subsequently "dismissed" by a hearing officer, Benoit refused to release Plaintiff from segregation.   (ECF No. 1 at PageID.13).    Plaintiff alleges that Defendant Benoit took these actions

as retaliation for Plaintiff's threat to sue Benoit.    Defendant Benoit's argument that he is entitled to summary judgment is unpersuasive.

In support of his motion for summary judgment, Defendant Benoit relies entirely upon the contents of his affidavit.    (ECF 44 at PageID.433; ECF No. 44-12 at PageID.551-53).    Benoit's affidavit, however, falls far short of the mark.    Benoit asserts that the allegations in Plaintiff's compliant are untrue, but such an assertion does nothing more than highlight the existence of a factual dispute necessitating trial.    (ECF No. 44-12 at PageID.552).    With respect to the misconduct charge he issued against Plaintiff, Benoit asserts:

> I would only have written a misconduct on Plaintiff if the behavior met the elements of the misconduct charge.    I have never written a misconduct for the purpose of retaliating against a prisoner.    To the best of my recollection, that misconduct report was dismissed for procedural reasons, not because the hearing officer found Plaintiff not guilty.

(ECF No. 44-12 at PageID.553).

With respect to Plaintiff's allegation that he was charged with a misconduct for retaliatory reasons, this statement fails to advance Benoit's cause.    Benoit has presented no evidence that the misconduct charge was dismissed "for procedural reasons."    Instead, Benoit speculates that such is the case.    Summary judgment is not warranted on the basis of speculation.    Benoit's assertion that he would not have charged Plaintiff with a misconduct unless Plaintiff's behavior "met the elements of the misconduct charge" fails for two reasons to advance Benoit's position.    First, these statements do not allege specific facts about Plaintiff's allegations, but instead are more appropriately characterized as unsubstantiated legal conclusions.    Furthermore, the assertion that Benoit would only have charged Plaintiff with a misconduct if Plaintiff's behavior "met the elements of the misconduct charge" is contradicted by Benoit's concession that the misconduct in question was

dismissed for reasons about which he can only speculate.    Finally, as to Plaintiff's allegation that Benoit refused to remove him from segregation following the dismissal of the misconduct charge, Benoit offers no evidence whatsoever.    Accordingly, the undersigned recommends that Defendant Benoit's motion for summary judgment be denied.

B.    Defendant Wise

In his verified complaint, Plaintiff asserts the following.    On March 20, 2013, Wise replied to the grievance Plaintiff filed alleging excessive force against Defendant Pepper.    (ECF No. 1 at PageID.12, 38-40).    In his response, Wise threatened Plaintiff as retaliation for Plaintiff's refusal to "sign off" on the grievance.    (ECF No. 1 at PageID.12, 40).    As noted above, on March 26, 2013, Plaintiff was charged with a misconduct for "Interference with the Administration of Rules."    This misconduct charge was initiated by Defendant Wise.    (ECF No. 44-7 at PageID.519).    Plaintiff alleges that Wise charged him with this misconduct as retaliation for filing an excessive force grievance against Defendant Pepper.    (ECF No. 1 at PageID.12, 16).

1.    Threatening Response to Grievance

In his response to Plaintiff's grievance against Defendant Pepper, Defendant Wise stated, in full, as follows:

> Your allegation(s) has been forwarded to the Warden's Office to determine what appropriate action is to be taken, which will include a review of the facts and, if warranted, an investigation.
>
> This grievance is being processed and you will receive a response after the review process is completed.    The review may take additional time to complete.    The staff member conducting the review, and an investigation, if one is warranted, may request a time extension to

complete their work.    You will be notified if a time extension is granted.

Please do not kite, write a letter, file a new grievance, or otherwise attempt to contact the Warden's Office or the Step I Grievance Coordinator in regards to this review process for your grievance.    Such attempts will not receive a reply since this will only slow down the review and any possible investigation that may be warranted.    As stated above, you will receive a response after the review process has been completed.

(ECF No. 1 at PageID.40).

There is nothing even remotely threatening about Defendant's response.    Defendant Wise did nothing more than inform Plaintiff of the process by which his grievance would be reviewed and requested that Plaintiff not hamper such efforts by continually contacting prison officials for updates.    This is nothing more than the bureaucratic equivalent of a parent asking a child to stop asking, "are we there yet?"    It is patently unreasonable to argue that this response would deter a person of "ordinary firmness" from continuing to engage in constitutionally protected conduct. Accordingly, the undersigned recommends that Defendant Wise is entitled to summary judgment as to this particular claim.

2.    Misconduct for "Interference with the Administration of Rules"

Defendant Wise issued the March 26, 2013 misconduct charging Plaintiff with "Interference with the Administration of Rules."    As previously noted, Plaintiff was found guilty of this charge.    Defendant Wise argues that this fact entitles him to summary judgment.    Defendant Wise does not dispute that Plaintiff was engaged in protected conduct.    Likewise, Defendant Wise does not dispute that Plaintiff suffered adverse action.    Thus, whether Defendant is entitled to summary judgment turns on assessment of the causation element.

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence."   *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken.   *Thaddeus-X*, 175 F.3d at 399 (citations omitted).   Conclusory allegations of retaliatory motive are insufficient, however.   *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004).   Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred.   *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977).   *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).   Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity."   *Eby*, 481 F.3d at 441-42.

Furthermore, where a prisoner alleges that a defendant falsely charged him with a misconduct violation for retaliatory purposes, evidence that the prisoner was found guilty of the misconduct violation is generally sufficient to satisfy the defendant's burden.   *See, e.g., Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) (where prisoner is found guilty of the allegedly retaliatory misconduct violation, such "essentially checkmates a retaliation claim"); *see also*, *Eby*, 481 F.3d at 442 (suggesting that the "checkmate" rule can be overcome where a prisoner presents

evidence that the prison official in question engaged in selective enforcement of the relevant prison rules and regulations).

As discussed above, Plaintiff was found guilty of the misconduct in question, (ECF No. 44-7 at PageID.519-20), and Plaintiff has presented no evidence that Defendant engaged in selective enforcement of the prison rule in question.    Accordingly, the undersigned recommends that Defendant Wise's motion for summary judgment be granted as to this particular claim.

At first glance, there is arguably an inconsistency between this particular recommendation and the recommendation above that Defendant Pepper's motion for summary judgment as to Plaintiff's Eighth Amendment claim be denied.   As discussed immediately above, Defendant Wise is entitled to relief based in part on the fact that Plaintiff was found guilty of the misconduct in question whereas that very same fact does not advance Defendant Pepper's cause. However, there exists a significant distinction in how Defendants Wise and Pepper seek to use or benefit from the fact that Plaintiff was found guilty of the misconduct in question.

Defendant Pepper seeks to use the misconduct conviction to preclude Plaintiff from litigating certain contested facts.   As discussed above, this issue is expressly governed by published Sixth Circuit authority.   On the other hand, Defendant Wise, consistent with Sixth Circuit authority, relies on the misconduct conviction not to preclude litigation of any fact or issue, but simply as evidence, which Plaintiff is free to rebut, relative to the issue of causation.   Courts recognize the distinction between these two concepts or uses.   *See, e.g., Maclin v. Holden*, 2015 WL 4634170 at *4-6 (E.D.Mich., Aug. 3, 2015).   Defendants also acknowledge as much, asserting in their response to the Court's Order to Show Cause, discussed above, that the checkmate rule articulated in *Madery*

concerns a legal issue distinct from the preclusion analysis discussed in *Peterson* and *Roberson*. (ECF No. 56).

### C.    Defendant Pepper

Plaintiff alleges that Defendant Pepper broke his wrist and immediately thereafter denied him medical treatment as retaliation for Plaintiff exercising his right to file grievances and lawsuits for perceived misbehavior by prison staff.    (ECF No. 1 at PageID.9-10, 16).

#### 1.    Denial of Medical Treatment

As discussed above, after Plaintiff broke his wrist, Defendant Spurbeck met with Plaintiff at his cell.    Plaintiff then met with another nurse the following morning.    The evidence belies Plaintiff's claim that he was denied medical care after injuring his wrist.    Thus, Plaintiff cannot establish that he suffered any adverse action.    Accordingly, the undersigned recommends that Defendant Pepper's motion for summary judgment be granted as to this claim.

#### 2.    Breaking Plaintiff's Wrist

Defendant Pepper argues that he is entitled to relief because "it was determined that Bostrom lied in his grievance that Pepper broke his left wrist."    (ECF No. 44 at PageID.432).    This argument fails for multiple reasons.    First, as discussed above, the Hearing Officer who conducted the March 26, 2013 misconduct hearing did not find that Plaintiff lied.    Moreover, even if the Hearing Officer's conclusion that Plaintiff was guilty of "Interference with the Administration of Rules" is

interpreted as a finding that Defendant Pepper did not use "excessive force," such fails to satisfy Defendant's burden as to either the adverse action or causation prongs.

With respect to adverse action, use of unlawful force in violation of the Eighth Amendment, would certainly deter a reasonable person from engaging in protected conduct.   As previously discussed, however, the Court has no evidence as to the standard applied by prison officials when assessing whether Defendant's actions constituted excessive force.   Regarding causation, Defendant has failed to satisfy the standard articulated above.   Plaintiff has introduced evidence that Defendant employed excessive force for a retaliatory purpose which shifted the burden to Defendant to present evidence that he would have taken the same action in the absence of Plaintiff's protected conduct.   Defendant has failed to present evidence demonstrating such.   While Defendant argues that his actions which resulted in Plaintiff's broken wrist were justified, as discussed above, such has not been established.   Accordingly, the undersigned recommends that Defendant Pepper's motion for summary judgment be denied as to this claim.


D.     Defendants Rowland and McKee

Plaintiff alleges that Defendants Rowland and McKee falsely charged his mother with misconduct and imposed an order precluding her from visiting Plaintiff as retaliation for Plaintiff's threats to report Rowland's alleged unprofessional conduct to prison officials.   (ECF No. 1 at PageID.6-7, 15).   Defendants assert that they are entitled summary judgment because "the administrative hearing found that his mother threatened her with physical harm."   (ECF No. 44 at PageID.430).

Following a February 9, 2013 incident with Plaintiff's mother, Rowland alleged that Plaintiff's mother attempted to assault her and proposed that Plaintiff's mother be subject to a "permanent visitor restriction."    (ECF No. 1-1 at PageID.22-25).    A hearing was conducted on this matter on March 6, 2013, following which it was determined that Plaintiff's mother "threatened Officer Rowland with physical harm" and that, as a result, Plaintiff's mother should be subject to "a permanent [vistor] restriction."    (ECF No. 1-1 at PageID.22-25).    To the extent that Defendants argue that preclusive effect be afforded to the factual findings made in this administrative hearing, the Court rejects such.    As discussed above, Defendants expressly declined, despite being ordered by the Court, to justify their reliance on the factual findings made in this administrative hearing. Accordingly, the Court finds that Defendants have failed to establish that any facts found by the hearing officer in this matter are entitled to preclusive effect in this Court.

As discussed above, however, in the context of Defendant Wise's motion for summary judgment, Defendants can nevertheless rely on the result of this administrative hearing in the context of the shifting burden analysis applicable to the causation element of a retaliation claim.    Plaintiff's mother was found guilty of the alleged misconduct and Plaintiff has presented no evidence that Defendants engaged in selective enforcement of the prison rule in question.    Moreover, Defendant McKee has presented evidence that the decision to impose a visitation restriction on Plaintiff's mother did not represent selective enforcement.    (ECF No. 44-10 at PageID.536).    Accordingly, the undersigned recommends that Defendant Rowland and Defendant McKee are both entitled to summary judgment as to this particular claim.

III.         Qualified Immunity

Defendants style their motion as a motion for summary judgment under Federal Rule of Civil Procedure 56, but also assert therein a claim for qualified immunity.   Defendants appear to misunderstand qualified immunity and, moreover, appear to be attempting to improperly shift the burden of proof in this matter to Plaintiff.    While Defendants are correct that Plaintiff would bear the burden to defeat an appropriate assertion of qualified immunity, *see, e.g., Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), Defendants have not advanced a legitimate claim of qualified immunity. Assertions of qualified immunity are appropriate where a defendant argues that the right a plaintiff seeks to enforce was not clearly established or where a defendant asserts that he reasonably believed his actions were lawful under existing law.   Here, Defendants merely assert that based upon the evidence submitted, there is no factual dispute necessitating a trial on the merits.   In other words, Defendants are simply seeking summary judgment under Federal Rule of Civil Procedure 56 regarding which Defendants bear the burden.   Accordingly, the Court rejects Defendants' request for relief based upon qualified immunity.

<u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 43), be **granted in part and denied in part**.   Specifically, the undersigned recommends that Defendants' motion be granted except with respect to the following claims, which should go forward: (1) Plaintiff's Eighth Amendment claim against Defendant Pepper; (2) Plaintiff's retaliation claim against Defendant Benoit; and (3) Plaintiff's claim that Defendant Pepper used excessive force and broke his wrist for unlawful retaliatory reasons.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.    28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 2, 2018    /s/ Ellen S. Carmody
ELLEN S. CARMODY
U.S. Magistrate Judge