UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BOSTROM #647630,

    Plaintiff,

v.

DERRICK PEPPER and
TROY BENOIT,

    Defendants.

_____/

Case No. 1:15-CV-336

HON. GORDON J. QUIST

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

## Jurisdiction

Plaintiff, John Bostrom, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC), sued Defendants, Derrick Pepper and Troy Benoit—MDOC custodial officers. Bostrom makes three claims: 1) Benoit violated his First Amendment rights by retaliating against him; 2) Pepper violated his Eighth Amendment rights by using excessive force; and 3) Pepper violated his First Amendment rights by retaliating against him. Bostrom brings his claims under 42 U.S.C. § 1983, and the Court has jurisdiction pursuant to 28 U.S.C. § 1331. A bench trial was held on July 16, 2018, wherein the Court heard testimony from Bostrom, Bostrom's mother Merri Decker, Benoit, and Pepper.

## Findings of Fact

Bostrom claims that Benoit terminated a single visitation between Bostrom and Ms. Decker after MDOC Officer Jennett Rowland reported that Decker swung at her (Rowland) with a closed

fist on February 9, 2013. Benoit did not have authority to permanently terminate visits from Decker. Decker attended a hearing, and the hearing officer made the decision to permanently terminate Decker's visitation rights.

Around 3:10 p.m. on February 16, 2013, Bostrom was drunk and became obstreperous with MDOC guards. A guard ultimately "tased" Bostrom after Bostrom refused to comply with instructions and did not calm down. Bostrom fell on his back, with both his left and right hands extended behind him. Bostrom broke his left wrist in the fall. The guards, including Pepper, who did not notice any particular injury, then rolled Bostrom over onto his stomach. Pepper helped hold Bostrom down while someone else handcuffed Bostrom behind his back. Guards, including Pepper, brought Bostrom to his feet, and escorted him across the prison yard to segregation. Pepper and another officer had their hands on Bostrom's shoulders with their forearms extended upward between Bostrom's handcuffed arms and his back. En route across the prison yard, Bostrom complained of pain in his left wrist. At one point, another officer approached and put Bostrom's right hand into a "gooseneck" hold. There is no indication that Pepper injured Bostrom.

Approximately twenty minutes after leaving Bostrom in a facility, per standard MDOC policy when a prisoner is tased, a nurse saw Bostrom, noted the smell of alcohol and stated that Bostrom refused care, but the nurse did not note wrist pain. On February 17, 2013, the next morning, a different nurse saw Bostrom while making her rounds, and noted that Bostrom complained of left wrist pain, had difficulty moving his wrist, and had some slight swelling. The nurse gave Bostrom ten packets of ibuprofen and instructed him to take them as instructed and to apply a cold compress to his wrist. Five days later, on February 22, 2013, Bostrom saw prison health care services, and he reported severe wrist pain. Health care ordered an x-ray of Bostrom's

wrist, which occurred on March 7, 2013, and revealed a fracture in the wrist. On March 8, 2013, Bostrom received a cast for his fractured wrist.

On March 28, 2013, approximately two days after Bostrom was released from segregation, Bostrom encountered Benoit at the dining area of the prison. Benoit asked Bostrom if he "learned his lesson," and Bostrom responded by threatening to initiate legal action against Benoit and Rowland. Shortly thereafter, Benoit filed a misconduct ticket against Bostrom for "threatening behavior," and Bostrom was returned to segregation. The MDOC ultimately dismissed the misconduct ticket. The misconduct ticket has not been produced.[1]

## Conclusions of Law

*First Amendment Retaliation*

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish a First Amendment retaliation claim, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected

---

[1] At trial, Benoit had no recollection of Decker, of Bostrom, of writing the misconduct ticket, or any of the other events at issue. Bostrom referenced Benoit's earlier sworn affidavit and asked Benoit if he recalled filing the affidavit and what Benoit swore to in it. Benoit did not recall what the affidavit said, and testified that he had not seen the entire affidavit "in years," although it is dated March 9, 2017. Bostrom asked Benoit to read the affidavit aloud in court. After doing so, Benoit testified that the affidavit did not refresh his recollection of any of the events at issue, and disavowed the affidavit by denying any recollection of the events and testifying, "I can't swear to something I don't recall." Further, the affidavit itself is speculative, contains unsubstantiated legal conclusions, and is self-contradictory. When asked by the Court about the affidavit, Benoit testified that he did not review records or prepare the document, and instead he "was asked to sign an affidavit that was waiting for [him] at the [Michigan Attorney General's] administrative assistant's office." This appears to be the practice of the Michigan Attorney General's office–not a very good practice. *See, e.g., Moore v. Davis*, No. 2:15-CV-140, 2018 WL 3062068, at *1 n.1 (W.D. Mich. June 21, 2018).

right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)).

a. Benoit:

   (1) Termination of Decker's Visitation. In the single incident in which Benoit caused the termination of Decker's visitation, Decker had swung at MDOC Officer Rowland. Bostrom did not show that the termination of a single meeting was motivated by Benoit's protected conduct. Rather, it was motivated by Decker's taking a swing at Rowland. As to the permanent ban of Decker from the facility, Benoit had no control. That decision was made by a hearing officer.

   (2) Remand to Segregation. It is not clearly established whether the threat to file a grievance is protected activity for First Amendment retaliation claims. *Evans v. Palmer*, No. 1:16-CV-602, 2018 WL 1586814, at *1 (W.D. Mich. Apr. 2, 2018) ("The Sixth Circuit 'appears not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity.'" (quoting Pasley v. Conerly, 345 F. App'x. 981, 984 (6th Cir. 2009))). Bostrom engaged in protected conduct by expressing his intent to grieve and possibly sue Benoit and Rowland. *See Pasley*, 345 F. App'x. at 984. Benoit initiated a misconduct report against Bostrom which led to Bostrom's return to segregation. *See Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2012). Benoit did so, at least in part, because of Bostrom's protected activity. Bostrom presented no testimony as to damages sustained by his remand to segregation.

4

b. Pepper:

Bostrom failed to show that Pepper took an adverse action against him and failed to show that any action was motivated in any way by protected conduct. Bostrom was obstreperous, and Pepper and the other MDOC guards restrained Bostrom appropriately. Accordingly, Bostrom's First Amendment retaliation claims against Benoit and Pepper fail, except for the claim against Benoit related to the misconduct ticket.

*Eighth Amendment Excessive Force*

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. Const. Amend. VIII. On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Whether the use of force meets this standard depends on several factors: the extent of the injury suffered; the need for the use of force; the relationship between the need and the amount used; the threat reasonably perceived by the officials; and any efforts made to temper the severity of the use of force. *Combs*, 315 F.3d at 556–57.

Bostrom has not shown that Pepper violated his Eighth Amendment rights. Pepper did not use the taser on Bostrom. Pepper did not break Bostrom's wrist. Pepper lawfully and appropriately restrained Bostrom, and his conduct did not reflect an unnecessary and wanton infliction of pain. A nurse saw Bostrom shortly after he arrived in segregation and did not notice any wrist pain.

Pepper did not violate Bostrom's Eighth Amendment rights related to use of force or obtaining medical care for Bostrom. Accordingly, Bostrom's Eighth Amendment claim fails.

## **Conclusion**

<u>Damages</u>: Bostrom did not introduce any evidence or argument relating to damages incurred because of his being placed in segregation: Therefore, the Court will award Bostrom the sum of $250.00 because of Benoit's causing his return to segregation.

A separate judgment will enter.


Dated: August 6, 2018                                /s/ Gordon J. Quist
                                                                                 GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE